7                    UNITED STATES DISTRICT COURT

8                   EASTERN DISTRICT OF CALIFORNIA

9

10   REYNALDO CABRAL,                    No. 2:08-cv-00029-MCE-DAD

11           Plaintiff,

12        v.                             MEMORANDUM AND ORDER

13   COUNTY OF GLENN, et al.

14           Defendants.

15                        ----oo0oo----

16        Plaintiff Reynaldo Cabral ("Plaintiff") seeks monetary and

17   injunctive relief against, *inter alia*, the City of Willows and

18   the City of Willows Police Department (together "City") and

19   Officer Jason Dahl ("Officer Dahl") (collectively "Defendants"),

20   for injuries sustained while detained in the Glenn County Jail.

21   Presently before the Court is Defendants' Motion to Dismiss filed

22   pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the

23   following reasons, Defendants' Motion is granted in part and

24   denied in part.[1]

25   ///

26   _____

27        [1] Because oral argument will not be of material assistance,
     the Court orders this matter submitted on the briefs.  E.D. Cal.
28   Local Rule 78-230(h).

                                1

# BACKGROUND[2]

On January 3, 2007, Chico Police discovered Plaintiff drenched in kerosene and clothed in nothing but Saran Wrap. Plaintiff claimed that he was attempting to set himself on fire to either cleanse or kill himself.  Chico Police took Plaintiff to Enloe Medical Center where he was examined.  Plaintiff appeared to be in good physical health, and a drug test administered came back negative.

Nevertheless, due to Plaintiff's bizarre behavior, Chico Police admitted Plaintiff to the psychiatric facility at Butte County Department of Behavioral Health ("BCBH").  BCBH diagnosed Plaintiff as having psychotic and depressive disorders and kept him overnight.

On January 4, 2007, BCBH changed its diagnosis of Plaintiff's condition to major depressive disorder and discharged him from the psychiatric facility with two prescriptions. Plaintiff's family allegedly asked that Plaintiff be re-admitted, but BCBH denied their request.

On January 5, 2007, Plaintiff claims that he began hearing voices from God, instructing him to kill his girlfriend. Subsequently, on January 6, 2007, Plaintiff attacked her.

The Glenn County Sheriff's Department ("GCSD") arrested Plaintiff and placed him in a holding cell at Glenn County Jail. According to Plaintiff's friends and family, they informed Glenn County Jail that Plaintiff was mentally ill.

---

[2] The following facts are taken from Plaintiff's Third Amended Complaint ("TAC").

A nurse examined Plaintiff, concluding that he was suicidal and that he demonstrated abnormal behavior and signs of depression. GCSD purportedly contacted Glenn County Department of Mental Health ("GCDMH"), but the latter entity refused to provide mental health services. Thus, Plaintiff did not receive any further medical services and was placed in a holding cell.

On the morning of January 8, 2007, naked and unarmed, Plaintiff allegedly began scooping water from the toilet in his cell and rubbing it on his body. Some of that water possibly contained Plaintiff's own waste. Glenn County Jail staff summoned Officer Dahl of the Willows Police Department, Officers Burns and Thompson of the California Highway Patrol, and officers Discharry, Blakely and Clemens of the GCSD to attempt a cell extraction.

Upon arrival, Officer Dahl ordered Plaintiff out of his cell, but Plaintiff refused to leave. After some time had passed, and Officer Dahl had conferred with the other officers, those officers stormed Plaintiff's cell. Officer Dahl allegedly tasered Plaintiff at least eight times over the course of several minutes. Plaintiff hid behind his toilet, so officers then attempted to compel Plaintiff's compliance by resorting first to a stun-type shield and then, more than ten minutes later, by tasering Plaintiff three more times. When the taser began to malfunction, Officer Dahl emptied his canister of pepper spray onto Plaintiff. Eventually, upon being promised he would be able to speak with his mother, Plaintiff peacefully left his cell.

///

///

3

Officers then cleaned Plaintiff, and Emergency Medical Technicians from the Willows Fire Department conducted a physical examination of him.  At or around 3:50 a.m. on January 8, 2007, Plaintiff was placed naked in a safety cell, which was unfurnished and had a rubber coating on the walls.

At or around 4:45 a.m., Plaintiff, while still under the effect of the pepper spray, allegedly again heard voices from God.  Plaintiff claims that he then collided with the wall of the cell, breaking his neck and paralyzing himself from the neck down.

Plaintiff allegedly received no medical attention until 1:09 p.m.  More time passed, and, at or around 1:59 p.m., Glenn County Jail transferred Plaintiff to Glenn Medical Center, where he was confirmed to be quadriplegic.  At or around 4:42 p.m., Plaintiff was transferred to Enloe Medical Center where he underwent surgery.  Plaintiff remains quadriplegic today.

**STANDARD**

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the...claim is and the grounds upon which it rests."  Conley v. Gibson, 355 U.S. 41, 47 (1957).

4

While a complaint attacked by a Rule 12(b)(6) motion to dismiss
does not need detailed factual allegations, a plaintiff's
obligation to provide the "grounds" of his "entitlement to
relief" requires more than labels and conclusions, and a
formulaic recitation of the elements of a cause of action will
not do. <u>Bell Atl. Corp. v. Twombly</u>, --- U.S. ----, 127 S. Ct.
1955, 1964-65 (2007) (internal citations and quotations omitted).
Factual allegations must be enough to raise a right to relief
above the speculative level. <u>Id</u>. at 1965 (citing 5 C. Wright &
A. Miller, <u>Federal Practice and Procedure</u> § 1216, pp. 235-36 (3d
ed. 2004) ("The pleading must contain something more...than...a
statement of facts that merely creates a suspicion [of] a legally
cognizable right of action")).

A court granting a motion to dismiss a complaint must then
decide whether to grant leave to amend. A court should "freely
give[]" leave to amend when there is no "undue delay, bad
faith[,] dilatory motive on the part of the movant, . . . undue
prejudice to the opposing party by virtue of . . . the amendment,
[or] futility of the amendment...." Fed. R. Civ. P. 15(a); <u>Foman
v. Davis</u>, 371 U.S. 178, 182 (1962). Generally, leave to amend is
denied only when it is clear the deficiencies of the complaint
cannot be cured by amendment. <u>DeSoto v. Yellow Freight Sys.,
Inc.</u>, 957 F.2d 655, 658 (9th Cir. 1992).

///
///
///
///
///

**ANALYSIS**

**I.   First Cause of Action: Claims Brought Pursuant to 42 U.S.C.
      § 1983 for Violations of the Fourteenth Amendment to the
      United States Constitution**

Plaintiff's First Cause of Action arises under 42 U.S.C.
§ 1983.  Plaintiff specifically claims Officer Dahl and the City
violated Plaintiff's Fourteenth Amendment Due Process rights by
denying him health care and by being deliberately indifferent to
his serious health care needs.

"[T]he more protective fourteenth amendment standard applies
to conditions of confinement when detainees...have not been
convicted" of a crime.  <u>Gary H. v. Hegstrom</u>, 831 F.2d 1430, 1432
(9th Cir. 1987).  The Due Process Clause requires, at least, that
"persons in custody have the established right to not have
officials remain deliberately indifferent to their serious
medical needs."  <u>Gibson v. County of Washoe, Nev.</u>, 290 F.3d 1175,
1187 (9th Cir. 2002), quoting <u>Carnell v. Grimm</u>, 74 F.3d 977, 979
(9th Cir. 1996).  This extends to psychiatric needs as well.
<u>Id</u>., citing <u>Cabrales v. County of Los Angeles</u>, 864 F.2d 1454,
1461 (9th Cir. 1988).  Defendants are "deliberately indifferent
to a prisoner's serious medical needs when they deny, delay, or
intentionally interfere with medical treatment."  <u>Lolli v. County
of Orange</u>, 351 F.3d 410, 419 (9th Cir. 2003), quoting <u>Hallett v.
Morgan</u>, 296 F.3d 732, 744 (9th Cir. 2002) (finding liability
under § 1983 where jail officers were aware that detainee was a
Type I diabetic and failed to provide medically necessary food or
insulin).

///

6

Plaintiff alleges no facts indicating Officer Dahl was deliberately indifferent to Plaintiff's need for medical attention.  While it is alleged that Officer Dahl knew Plaintiff had psychiatric issues, Plaintiff has not alleged that the officer knew Plaintiff was suicidal and that he was not receiving medical care, or that Officer Dahl attempted to interfere with Plaintiff's receipt of such medical attention.  To the contrary, after completing the cell extraction, Plaintiff was treated by paramedics, was allegedly acting in compliance with the officers' demands, and appeared to be in good physical health. Accordingly, Defendants' Motion to Dismiss Plaintiffs' First Cause of Action is granted with leave to amend.

**II.  Second Cause of Action: Claims Arising Under the Fourth Amendment to the United States Constitution**

Plaintiff's Second Cause of Action alleges that the City and Officer Dahl deprived Plaintiff of his rights under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures and from excessive force.

      **A.  The Merits of Plaintiff's Excessive Force Claim Against Officer Dahl**

As a threshold matter, the parties dispute the applicable lens through which this Court should evaluate Officer Dahl's conduct.  Plaintiff argues that his excessive force claim should be determined via an "objective reasonableness" standard.

See Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1197 (9th
Cir. 2002), citing Pierce v. Multonomah County, 76 F.3d 1032,
1043 (9th Cir. 1996).  However, Defendants argue that since the
force inflicted by Officer Dahl occurred during a jail
disturbance, the more deferential inquiry into whether such force
constituted "unnecessary and wanton infliction of pain" applies.
See  Whitley v. Albers, 475 U.S. 312, 318-320 (1986).  In this
instance, Plaintiff is correct.

"The Due Process clause protects pretrial detainees from the
use of excessive force that amounts to punishment.  Although the
Supreme Court has not expressly decided whether the Fourth
Amendment's prohibition on unreasonable searches and seizures
continues to protect individuals during pretrial detention, [the
Ninth Circuit has] determined that the Fourth Amendment sets the
applicable constitutional limitations for considering claims of
excessive force during pretrial detention."  Gibson, 290 F.3d at
1197 (internal citations and quotations omitted).  Accordingly,
Graham v. Connor, 490 U.S. 386 (1989), "therefore explicates the
standards applicable to a pretrial detention excessive force
claim in this circuit."  Id.

"[W]hether a defendant officer's use of force was
'reasonable' under the Fourth Amendment 'requires a careful
balancing of the nature and quality of the intrusion on the
individual's Fourth Amendment interests against the
countervailing government interests at stake.'
///
///
///

8

This analysis requires 'careful attention to the facts and
circumstances in each particular case, including the severity of
the crime at issue, whether the suspect poses an immediate threat
to the safety of the officers or others, and whether he is
actively resisting arrest or attempting to evade arrest by
flight.'" Id., citing Graham, 490 U.S. at 396.

Thus, "[t]he reasonableness inquiry in an excessive force
case is an objective one: the question is whether the officers'
actions are objectively reasonable in light of the facts and
circumstances confronting them, without regard to their
underlying intent or motivation. In considering an excessive
force claim, [the Court balances] the nature and quality of the
intrusion on the individual's Fourth Amendment interests against
the countervailing governmental interests at stake." Lolli v.
County of Orange, 351 F.3d 410, 415 (9th Cir 2003), quoting
Graham, 490 U.S. at 396-397 (internal quotations omitted).
"[T]his balancing 'nearly always requires a jury to sift through
disputed factual contentions, and to draw inferences therefrom."
Id., quoting Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002).

Such is the case here. Plaintiff alleges, *inter alia*, that
during the attempted cell extraction, Officer Dahl utilized his
taser multiple times on Plaintiff, who was naked, unarmed, and
hiding behind a toilet. Officer Dahl also allegedly used a
"stun-type shield," and ultimately resorted to the use of pepper
spray. The reasonableness of those actions is most properly a
question for the finder of fact. Thus, Plaintiff has
sufficiently stated an excessive force claim against Officer
Dahl.

9

**B.    Officer Dahl's Qualified Immunity Defense**

However, "[t]he doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Pearson v. Callahan</u>, 129 S. Ct. 808, 815 (2009), quoting <u>Harlow v. Fitgerald</u>, 457 U.S. 800, 818 (1982).  The Court thus evaluates both whether a constitutional right has been violated, and whether the "right at issue was 'clearly established' at the time of [Defendants'] alleged misconduct." <u>Id</u>. at 815-816.

In this case, the Court has already determined above that Plaintiff adequately stated an excessive force claim. Accordingly, whether Officer Dahl "may be held personally liable for allegedly unlawful official action...turns on the 'objective legal reasonableness' of the action assessed in light of the legal rules that were 'clearly established' at the time it was taken." <u>Anderson v. Creighton</u>, 483 U.S. 635, 639 (1987) (internal citations omitted).

The determination of whether a right was clearly established requires an "'objective but fact-specific inquiry.'" <u>Sanders v. City of Fresno</u>, 551 F. Supp. 2d 1149, 1167 (E.D. Cal. 2008), quoting <u>Inouye v. Kemna</u>, 504 F.3d 705, 712 (9th Cir. 2007).  "The critical question is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violates the right.

///

Whether a right is clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition. In making this determination, the court considers the state of the law at the time of the alleged violation, but it is unnecessary for the precise conduct in question to have been previously held unlawful." Id. (internal citations and quotations omitted). At the time of the events alleged in this case, "the law [was] clearly established that officers cannot use intermediate force against an individual suspect who does not pose an immediate threat, even if the suspect is not fully complying with police commands." Kaady v. City of Sandy, 2008 WL 5111101, *19 (D. Or. 2008). "As of September 2005...police officers had reasonable notice that they may not use a Taser against an individual suspect who does not pose a threat and has merely failed to comply with commands." Id. at *21.

In the instant case, Plaintiff alleges Officer Dahl repeatedly assaulted him, a psychotic individual, who was naked and unarmed, and, though he was not responding to officers' commands, was all the while hiding behind the toilet in his secured jail cell. Accordingly, as stated, Plaintiff has adequately alleged a constitutional violation occurred. Moreover, construing those allegations in the light most favorable to Plaintiff, it would have been clear to a reasonable officer that such conduct as alleged was unlawful. See Id. Consequently, at this stage in the proceedings, qualified immunity cannot attach, and Defendants' Motion to Dismiss Plaintiff's second Cause of Action is denied as to Officer Dahl.
///

11

## C.   Plaintiff's Excessive Force Claim Against the City

Finally, to prevail against City, Plaintiff "must have sufficiently alleged that: (1) [Plaintiff] was deprived of his constitutional rights by the City acting under color of state law; (2) that the City has customs or policies which amount to deliberate indifference to [Plaintiff's] constitutional rights; and (3) that these policies were the moving force behind the constitutional violations.  In this circuit, a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers conduct conformed to official policy, custom, or practice." <u>Estate of Amos ex rel. Amos v. City of Page, Ariz.</u>, 257 F.3d 1086, 1094 (9th Cir. 2001). According to Plaintiff, approximately nine months prior to the incident underlying the instant action, City of Willows Police Department employees similarly utilized a taser in an attempt to subdue another inmate.  Plaintiff contends this separate incident is indicative of a departmental policy promoting the use of tasers under circumstances similar to those confronted in this case.  Accordingly, because Plaintiff alleged Officer Dahl's actions were taken pursuant to the customs and policies of the City, Plaintiff has properly stated a claim against the governmental entities.

///

///

///

///

## D.   Plaintiff's Unreasonable Search and Seizure Allegations

Defendants also challenge Plaintiff's general averment that Defendants violated his right to be free from unreasonable searches and seizures.  Because Plaintiff alleges no facts indicating any sort of search took place, he has not stated a claim against Defendants for any such unreasonable search.

However, for the same reasons Plaintiff's excessive force claim survives, so does his claim for unreasonable seizure.  "In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force.  In most instances, that will be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct.  The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized 'excessive force' standard."  <u>Graham</u>, 490 U.S. at 394 (internal citations omitted).  Plaintiff's claim for excessive force, inasmuch as it derives from the Fourth Amendment, is indeed a claim that he was unreasonably seized.

Accordingly, Defendants' Motion to Dismiss Plaintiff's Second Cause of Action is granted with leave to amend as to Plaintiff's unreasonable search claim and denied as to Plaintiff's unreasonable seizure and excessive force claims.

///

13

**III.   Third Cause of Action: Claims Brought Pursuant to California Civil Code § 52.3 ("Bane Act")**

Plaintiff's Third Cause of Action alleges Defendants violated Plaintiff's rights under California Civil Code § 52.3, which states, in pertinent part:

> No governmental authority, or agent of a governmental authority,...shall engage in a pattern or practice of conduct by law enforcement officers that deprives any person of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States or by the Constitution or laws of California.

As stated above, Plaintiff adequately alleges a pattern or practice of conduct by which officers use tasers on jailed individuals.  Thus, for the purposes of the instant Motion, Plaintiff has adequately stated a claim pursuant to § 52.3.

Nevertheless, Defendants argue that they are entitled to immunity as to Plaintiff's state law claims, including this Third Cause of Action.  Pursuant to California Government Code § 844.6, which provides that "a public entity is not liable for...[a]n injury to any prisoner," City is so entitled.

However, that section provides no protection to Officer Dahl individually, nor is he alternatively entitled to immunity under Government Code § 845.8(b)(1), which is applicable to prisoners attempting to escape.  Plaintiff's allegations simply do not support the conclusion that, by hiding behind the toilet in his cell, Plaintiff was attempting to flee.

Accordingly, Defendants' Motion to Dismiss is granted with leave to amend as to City and denied as to Officer Dahl.

///

## IV. Fourth Cause of Action: Dependant Adult Abuse

Plaintiff's Fourth Cause of Action alleges abuse of a dependent adult in violation of the Elder Abuse and Dependent Adult Civil Protection Act ("Elder Abuse Act"), California Welfare & Institutions Code § 15600 et seq., warranting enhanced penalties under Welfare and Institutions Code § 15657. "'Abuse of an elder or a dependent adult' means...[p]hysical abuse, neglect, financial abuse, abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or mental suffering." Cal. Welf. & Inst. Code § 15610.07.

Such physical abuse includes assault and battery, and a dependant adult is defined, *inter alia*, as "any person between the ages of 18 and 64 years who resides in this state and who has physical or mental limitations that restrict his or her ability to carry out normal activities or to protect his or her rights, including, but not limited to, persons who have physical or developmental disabilities, or whose physical or mental abilities have diminished because of age." Id., §§ 15610.63, 15610.23.

Section 15657 provides enhanced remedies "where it is proven by clear and convincing evidence that a defendant is liable for physical abuse as defined in Section 15610.63 or neglect as defined in Section 15610.57, and that the defendant has been guilty of recklessness, oppression, fraud, or malice in the commission of this abuse."

///
///
///

15

Whether California's Elder Abuse Act applies on these facts appears to be an issue of first impression. While the plain language of the statute does not appear to foreclose such a holding, the Court need not address that rather complex question because Plaintiff has not pled facts indicating he was a dependent adult as defined by California law.

To the contrary, this Court agrees with the reasoning in <u>Jay v. Kubly</u>, an unpublished appellate court opinion in which the court stated, "the statutory definition [of dependent adult] is fairly broad, but must be read in the light of the relevant legislative history, and of reason. In <u>Delaney v. Baker</u>, 20 Cal. 4th 23 (1999), the [California] Supreme Court reviewed the legislative history of section 15657, concluding one of its major objectives 'was the protection of residents of nursing homes and other health care facilities.' <u>Id</u>. While the definition of 'dependent adult' is not limited to persons living in such facilities, it reasonably should extend only to persons whose disabilities and needs are comparable to persons who are compelled to live in nursing homes and other health care facilities." 2008 WL 77572 *5 (1st Dist. 2008).

That court went on to point out that "[i]n <u>Estate of Shinkle</u>, 97 Cal. App. 4th 990 (2002), disapproved on other grounds in <u>Bernard v. Foley</u>, 39 Cal. 4th 794, 816 f.14 (2006), for example, the adult in question was a dependent adult not simply because she was 77 years old and no longer could walk, but because '[s]he needed assistance with most activities of daily living, including cooking, bathing and toileting. She no longer did her own banking and needed help paying her bills.'" <u>Id</u>.

16

Accordingly, the <u>Jay</u> court determined that the plaintiff in the
case before it was not a "dependent adult" despite the fact he
was "56 years of age, was blind in one eye and partially blind in
the other eye, suffered from posttraumatic stress disorder, was
disabled due to his medical and psychiatric problems, suffered
from neurological 'sequelae' from a rifle wound to the head, was
facially disfigured and had been rated as 100 percent disabled by
the United States Department of Veterans Affairs." <u>Id</u>.  That
Court reasoned that "[a]t most these allegations support a
conclusion that decedent had some physical and mental
disabilities.  They [did] not show that decedent, who admittedly
lived independently, nonetheless suffered from restrictions in
the ability to carry out normal activities or protect his rights
comparable to those suffered by the decedent in <u>Estate of
Shinkle</u>." <u>Id</u>.

Likewise here, at the time of the incidents alleged in the
instant TAC, Plaintiff has not adequately alleged he was a
dependent adult.  Aside from allegations that he was mentally ill
and psychotic, Plaintiff makes only the conclusory assertion that
"[a]t all relevant times, plaintiff Cabral was a dependent adult
as described in Welfare & Institutions Code § 15610.23 and had
mental limitations that restricted his ability to carry out
normal activities, or to protect his rights."  TAC, ¶ 79.15.
These allegations are simply insufficient to establish that
Plaintiff was a dependent adult as that term is used in the Elder
Abuse Act.  Accordingly, Defendants' Motion to Dismiss
Plaintiff's Fourth Cause of Action is granted with leave to
amend.

1   **V.    Fifth Cause of Action: Intentional Infliction of Emotional
2          Distress**

3

4       Defendants' Motion next challenges Plaintiff's Intentional
5   Infliction of Emotional Distress ("IIED") claim.  "The tort of
6   intentional infliction of emotional distress is comprised of
7   three elements: (1) extreme and outrageous conduct by the
8   defendant with the intention of causing, or reckless disregard of
9   the probability of causing, emotional distress; (2) the plaintiff
10  suffered severe or extreme emotional distress; and (3) the
11  plaintiff's injuries were actually and proximately caused by the
12  defendant's outrageous conduct."  Berkeley v. Dowds, 152 Cal.
13  App. 4th 518, 533 (2d Dist. 2007) (citations omitted).
14  Plaintiff's conclusory allegations as to the severe emotional
15  distress he allegedly suffered as a result of Officer Dahl's
16  actions during the cell extraction are insufficient to state a
17  claim.  Thus, Defendants' Motion to Dismiss Plaintiff's Fifth
18  Cause of Action is granted with leave to amend.

19

20  **VI.   Sixth Cause of Action: Violation of Government Code § 845.6**

21

22      Plaintiff asserts Defendants violated California Government
23  Code § 845.6 by failing to provide medical or psychiatric
24  attention to plaintiff who was known to be in need of immediate
25  care due to an obvious medical or psychological condition.
26  Section 845.6 provides:
27  ///
28  ///

> "[A] public employee, and the public entity where the
> employee is acting within the scope of his employment,
> is liable if the employee knows or has reason to know
> that the prisoner is in need of immediate medical care
> and he fails to take reasonable action to summon such
> medical care."

Nevertheless, this Court has previously stated that while Plaintiff asserts liability under § 845.6, "[t]he provision of § 845.6 upon which Plaintiff relies makes exceptions for failure to diagnose and/or medicate a mental illness (Cal. Gov't Code § 855.8) and for [failure] to confine a person for mental illness (Cal. Gov't Code § 856)." Memorandum and Order Granting in Part and Denying in Part Motion to Dismiss, 15:13-16 (September 30, 2008). This Court determined then, and it is true now, that "Plaintiff may have been in need of attention for his mental health, but § 845.6 does not create liability in that instance." Id., 15:20-23. Accordingly, Defendants' Motion to Dismiss Plaintiff's Sixth Cause of Action is granted with leave to amend.

## VII. Seventh Cause of Action: Negligent Hiring

"In California, an employer can be held liable for negligent hiring if he knows the employee is unfit, or has reason to believe the employee is unfit or fails to use reasonable care to discover the employee's unfitness before hiring him." Juarez v. Boy Scouts of Am., Inc., 81 Cal. App. 4th 377, 395 (2000), quoting Evan F. v. Hughson United Methodist Church, 8 Cal. App. 4th 828, 843 (3d Dist. 1992). Plaintiff has wholly failed to allege any facts indicating City is liable for negligently hiring Officer Dahl.

19

Consequently, Defendants' Motion to Dismiss Plaintiff's Seventh
Cause of Action is granted with leave to amend.

**VIII.       Ninth Cause of Action: Assault**

Defendants do not specifically attack this cause of action,
other than to generally claim immunity under California
Government Code §§ 844.6, 845.8 as discussed above.  For the same
reasons already discussed, City is entitled to immunity, but that
immunity does not extend to Officer Dahl.  Accordingly,
Defendants' Motion to Dismiss is granted with leave to amend as
to City and denied as to Officer Dahl.

**IX.  Eleventh and Twelfth Causes of Action: Violation of Article
1 §§ 7(a) and 13 of the  California Constitution**

Plaintiff's twelfth claim for damages and injunctive relief
arises under Article I, § 7(a) of the California Constitution.
That section provides, "A person may not be deprived of life,
liberty, or property without due process of law."  However,
Article I, § 7(a) does not "afford a right to seek damages to
remedy the asserted violation of the due process liberty
interest."  <u>Katzberg v. Regents of University of California</u>, 29
Cal. 4th 300, 329 (2002).  Thus, to the extent he seeks damages,
Plaintiff's claim must fail.  Furthermore, Plaintiff is no longer
in custody rendering any injunctive relief inappropriate.
Consequently, Defendants' Motion to Dismiss Plaintiff's Twelfth
Cause of Action is granted without leave to amend.

Article I, § 13 of the California Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated; and a warrant may not issue except on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized." This Court has previously determined that, like § 7(a), § 13 similarly confers no private cause of action for damages. <u>See</u> <u>Buzayan v. City of Davis Police Dept.</u>, 2007 WL 2288334, *8-9 (E.D. Cal. Aug. 8, 2007). For the same reasons just stated, Plaintiff is similarly unable to state a claim for injunctive relief under § 13. Accordingly, Defendants' Motion to Dismiss Plaintiff's Eleventh Cause of Action is also granted without leave to amend.

**CONCLUSION**

Defendants' Motion to Dismiss Plaintiff's First, Fourth, Fifth, Sixth, and Seventh Causes of Action is GRANTED with leave to amend. Defendants' Motion to Dismiss Plaintiff's Eleventh and Twelfth Causes of Action is GRANTED without leave to amend.

///
///
///
///
///
///
///

Defendants' Motion to Dismiss Plaintiff's Third and Ninth Causes of action is GRANTED with leave to amend as to the City and DENIED as to Officer Dahl.  Defendants' Motion to Dismiss Plaintiff's Second Cause of Action is DENIED.

Where leave to amend has been ordered, any such amendment(s) shall be filed not later than twenty (20) days after this Memorandum and Order is electronically filed.

IT IS SO ORDERED.

Dated: March 18, 2009

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE